

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 335 | **DATE** | August 21, 2001 |
| **CASE TITLE** | Evelyn L. Houston  v  Sidley & Austin | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 29 2001 date docketed | 29 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 28 PM 1:22 | | |
| GDS courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EVELYN L. HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Nos. 98 C 5559 and 99 C 0335 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SIDLEY & AUSTIN, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
AUG 2 9 2001

## MEMORANDUM OPINION AND ORDER

In her three count amended complaint against her former employer, Sidley & Austin, plaintiff Evelyn Houston has alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12100 et seq., (Count I), race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (Count II), and that defendant terminated her employment in retaliation for exercising her rights under the Illinois Workers' Compensation Act, 820 ILCS 305/1 et.seq. (Count III). Defendant has moved for summary judgment on all counts. For the reasons set forth below, defendant's motion is granted.

### Facts[1]

Defendant Sidley & Austin is a large law firm based in Chicago. Defendant hired plaintiff as a legal secretary beginning April 30, 1990. On June 14, 1993, plaintiff told her supervisor that she had injured her back while lifting files and could not continue working. On

---

[1] The facts are taken from defendant's LR 56.1 Statement of Uncontested Facts and plaintiff's response thereto. The court notes that most of plaintiff's denials of defendant's LR 56.1 statements are unsupported by citation to admissible evidence as required by the Local Rule. The statement of facts to which those unsupported denials are directed are deemed to be uncontested pursuant to the Local Rule. Those statements properly denied by plaintiff (by way of her own affidavit) are considered contested for purposes of the pending motion.

June 18, 1993, defendant placed plaintiff on inactive leave of absence status and filed the necessary papers for plaintiff's worker's compensation claim with defendant's workers' compensation carrier, Chubb Group of Insurance ("Chubb"). Chubb administered defendant's plan and was authorized to decide all claims for benefits and to issue binding decisions on appeals.

On June 21, 1993, defendant sent plaintiff an application for short-term disability to be sent to defendant's short-term disability insurance carrier, Group America, Inc ("Group"). Plaintiff filled out and submitted the application, on which her doctor, Mahendra Patel, indicated that plaintiff would be unable to work for an indefinite period of time. Plaintiff was awarded six months short-term disability benefits, which continued until December 1993. Although in her affidavit plaintiff swears that she received the short-term disability claim form in August, not June, both she and Dr. Patel signed and dated the form on June 24, 1993.

On January 24, 1994, plaintiff submitted an application for long-term disability benefits on which she stated she was "totally disabled" since June 1993, and that she would be unable to resume any work for an indefinite period of time. Under defendant's long-term disability plan, its provider, Provident Life and Accident Insurance Co. ("Provident"), has full, exclusive and discretionary authority to control, manage and administer claims, including the right to determine entitlement to benefits. On March 30, 1994, Provident approved plaintiff's claim and awarded benefits.

In the fall of 1994, Provident determined that plaintiff was no longer disabled and terminated her long-term disability benefits effective December 31, 1994. In a letter to Provident dated January 27, 1995, plaintiff appealed from the denial of benefits and submitted to Provident

a Proof of Continuance of Disability form. On this form, plaintiff stated that she was unable to perform such duties as "sitting, standing, bending, cooking, shampooing, cleaning, and seeing and reading PC monitors. Plaintiff's physician, Dr. Patel, indicated that plaintiff was disabled for her own occupation and any other work, and that she was unable to return to work for an "indefinite" period of time.

On February 13, 1995, Provident acknowledged and then denied plaintiff's appeal. Provident informed plaintiff that it had denied her appeal because:

> Although there is a physician's statement, this is insufficient information on which to continue disability due to your purported cervical problems. In addition, there is [sic] no medical records to establish disability from the eye condition which you mentioned. Provident's ERISA Appeals Committee has fully reviewed all medical records in your file and must uphold the termination of your long-term disability claim. Any further information you wish to submit must be received by March 12, 1995, 60 days from the date you received Provident's termination letter.

In a letter dated March 9, 1995, plaintiff requested further review of Provident's denial of benefits, stating "I am not able to perform my own occupation as a legal secretary nor any other job due to chronic pain of the cervical spine, spasm of the near reflex of both eyes, and depression." On April 6, 1995, Provident informed plaintiff that it had reviewed all medical information contained in her file and had upheld the termination of long-term disability benefits.

Defendant's workers' compensation carrier, Chubb, denied plaintiff's worker's compensation claim on August 16, 1993. Plaintiff filed an Application for Adjustment of Claim with the Illinois Industrial Commission, seeking worker's compensation benefits for an alleged work related injury to her hands and neck. On March 18, 1994, plaintiff filed an Application for Adjustment of Claim, seeking worker's compensation benefits for an alleged work-related injury to her "eyes." On December 11, 1995, plaintiff filed an Application for Adjustment of Claim

3

with the Illinois Industrial Commission seeking worker's compensation benefits for an alleged work related injury to her "cervical spine."

At a hearing before the Industrial Commission on December 19, 1997, plaintiff testified that "I acquired accommodative spasm of the near reflex while working at Sidley & Austin while working on a PC, I suffered tremendous pain over the years, it got progressively worse until June 7, 1993." "I wrote a memo stating my plan to file a worker's comp injury, and since that time I have seen 5 ophthalmologists, the most recent being Dr. Jeffery Nichols, a neuro ophthalmologist who has the same diagnosis, accommodative spasms of the near reflex for which there is no cure." Plaintiff also testified that "accommodative spasm is not curable nor treatable and it gets progressively worse and it did."

Plaintiff applied to the Social Security Administration ("SSA") for social security disability benefits on December 22, 1993. On her application, plaintiff stated that her condition keeps her from working because "I can't use PC because I can't sit, bend, reach nor lift due to cervical spine injury which causes pain in my head, neck, shoulders, arms and hands, as well as muscle spasms which prevent me from taking short hand dictation." On February 12, 1994, plaintiff stated on a pain questionnaire submitted to the SSA that she has "constant excruciating pain and cannot walk shop do chores socialize read or focus on text." On a vocational report submitted to SSA on March 11, 1994, plaintiff stated that "because of my eye injury which has caused a focusing problem I can no longer read text for preparing lectures, and lesson plans. I cannot focus on text from line to line without blurred vision [and] loss of place while reading, and therefore can no longer teach. The same applies when typing from a manuscript for printed text." Based on the information provided by plaintiff, the SSA found that plaintiff was entitled to

4

social security disability benefits which she began receiving in September 1994. On a November 1997 Report of Continuing Disability Interview form to SSA, plaintiff stated that she did not feel that she was able to return to work and that her doctor had not told her that she was able to return to work. SSA has continued to provide plaintiff with disability benefits.

Plaintiff remained on leave of absence status for more than four years. During that status, neither plaintiff, nor anyone on her behalf, contacted defendant to request that she be permitted to return to active duty as a full time or part time employee. Nor did plaintiff or anyone on her behalf contact defendant to request any type of accommodation in order to enable her to return to active duty.

In a letter dated September 15, 1997, defendant terminated plaintiff's employment effective September 15, 1997. The letter indicated that more than four years had elapsed since the last time plaintiff had worked. At her deposition plaintiff testified that she did not recall making any effort to contact defendant after receiving the letter. Nor did she recall ever contacting defendant during her leave of absence to request a return to work either full or part time.

## Discussion

Count I

In Count I (entitled "Handicap Discrimination") plaintiff apparently attempts to allege a claim under the ADA for failure to accommodate her disability. Defendant argues that the count should be dismissed because plaintiff never raised this claim before the Equal Employment Opportunity Commission ("EEOC").

Plaintiff filed her charge with the EEOC on May 11, 1998. In it, she states that "I believe I have been discriminated against because of my age, 50, (DOB 12/15/46), my race, black, my sex, female, and retaliated against for filing a worker's compensation complaint and an ERISA complaint . . .." She complains about her termination and loss of disability benefits, but makes no claim that she asked for and was refused an accommodation.

"A party may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." Conley v. Village of Bedord Park, 215 F.3d 703, 710 (7th Cir. 2000) (quoting Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996). Allegations in a complaint fall within the scope of an EEOC charge if they are like or reasonably related to those contained in the charge. Id.

The court finds that plaintiff's failure to accommodate claim is not like or reasonably related to the discrimination claims before the EEOC. Indeed, plaintiff does not argue otherwise. The gist of the EEOC charge is that females and blacks were treated differently than white males. There is no suggestion that plaintiff requested and was denied the ability to return to work with a reasonable accommodation, or even that females and blacks wee not allowed accommodations while whites were. The dual purpose of the EEOC charge is to afford the EEOC an opportunity to investigate and conciliate the dispute, and to give the employer some notice of the employee's claims. Plaintiff's charge fails to fulfill either purpose with respect to her failure to accommodate claim. Accordingly, Count I is dismissed.

Moreover, even if plaintiff could establish that her failure to accommodate claim is within the scope of her EEOC charge, she cannot prevail on the claim. The "standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches."

Jovanovic v. In-Sink-Erator Division of Emerson Electric Co., 201 F.3d 894, 899 (7th Cir. 2000). There is no evidence that plaintiff ever requested an accommodation or ever indicated a desire to return to work prior to filing her law suit. Indeed, all of the documents submitted by plaintiff to defendant indicate just the opposite, that plaintiff could not work at all. Accordingly, even if plaintiff's accommodation claim within the scope of her EEOC charge (which it does not) defendant is entitled to summary judgment on Count I.

Count II

In Count II, plaintiff alleges that after she was injured, she applied for a temporary and permanent disability, which was initially granted, but then revoked. She alleges that non-African American employees who were injured were either allowed to return to work with an accommodation or given permanent disability.

Plaintiff cannot establish a prima facie case of discrimination under the now familiar burden shifting analysis first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case, plaintiff must demonstrate that, 1) she belongs to a protected class, 2) she performed her job satisfactorily, 3) she suffered an adverse employment action, and 4) her employer treated similarly situated employees outside of her protected class more favorably. Id.

Plaintiff cannot establish the third element. As already noted, she has no evidence that she was denied an accommodation, because she has no evidence to suggest that she ever requested one. Moreover, the undisputed evidence demonstrates that defendant played no role in the decision to grant or terminate either long-term or short-term benefits. All such decisions were made by the insurance carriers, and plaintiff has offered no evidence that defendant

7

influenced the carriers' decision in any way. Accordingly, defendant is entitled to summary judgment on Count II.

Count III

In Count III, plaintiff alleges that defendant terminated her in retaliation for her filing a workers' compensation claim. Plaintiff filed her worker's compensation claim with Chubb in June 1993, which was denied in August 1993. She then filed her initial Application for Adjustment of Claim with the Illinois Industrial Commission on August 31, 1993. She was terminated on September 15, 1997, over four years later. That delay itself is sufficient to defeat plaintiff's claim. See Bush v. Commonwealth Edison Co., 990 F.2d 928, 933 (7th Cir. 1993) (claim of retaliatory discharge after two years too attenuated.)

Aside from the fact that she was ultimately terminated, plaintiff has no evidence to link the discharge to her worker's compensation claim. Therefore, plaintiff asks the court to conclude that defendant waited four years to retaliate against her for filing the claim. Such a conclusion is simply not justified. " The causality element requires more than a discharge in connection with filing a workers' compensation complaint..... In other words, an employer cannot be held liable for a retaliatory discharge solely because the employer fired an employee who at one time or another filed a worker's compensation claim." Juszczak v. Blommer Chocolate Co., 1999 WL 1011954 (N.D. Ill. Sept. 30, 1999) (quoting Dixon Distrib. Co. v. Hanover Ins. Co., 249 Ill.App.3d 837, 845 (5th Dist. 1993)). Because plaintiff has presented no evidence to suggest that her discharge was related in any way to her filing a worker's compensation claim, defendant is entitled to summary judgment on Count III.

## Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted.

**ENTER: August 21, 2001**

_____
Robert W. Gettleman
United States District Judge